USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

RECEIVED
JUN 12 2008
U.S.D.C. S.D.N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Commodity Futures Trading Commission,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>Walter, Scott, Lev & Associates, LLC,<br>Michael Ross,<br>Maxim Yampolsky,<br>Edward Sapienza, Jr.,<br>Frank Schiavone,<br>Michael Korobov, and<br>Boris Shuster, a/k/a/ Robert Shuster,<br><br>　　　　　　　　　　Defendants, and<br><br>Michael Edwards Trading Group, Ltd.,<br>JSG Freight Systems, Inc.,<br>Shuster, Shuster & Shuster, Ltd.,<br>BLJ Consulting, Inc.,<br>Winn Industries Division of Ontario, Limited<br>(1430214 Ontario, Limited), and<br>The Fuzzy Group, Inc.,<br><br>　　　　　　　　　　Relief Defendants. | 03 CV 9126<br><br>**Order for Entry of<br>Injunctive Relief, Damages and<br>Ancillary Equitable Relief Against<br>Defendant Walter, Scott, Lev &<br>Associates, LLC** |

On November 18, 2003, the Commodity Futures Trading Commission ("Commission" or "CFTC") filed a Complaint charging defendant Walter, Scott, Lev, & Associates, LLC ("Defendant" or "WSL") and others with selling illegal foreign currency futures contracts and cheating, defrauding and deceiving customers in violation of Sections 4(a) and 4b(a)(2) of the Commodity Exchange Act, as amended ("Act"), 7 U.S.C. §§ 6(a) and 6b(a)(2) (2001), and Commission Regulation 1.1(b), 17 C.F.R. § 1.1(b) (2002). The Complaint also charged that WSL is liable for the fraudulent conduct of its officers, directors, managers, employees and

agents pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2001), because all such violations were within the scope of their office or employment with WSL.

On November 19, 2003, WSL was properly served with the summons, Complaint and supporting papers pursuant to Rule 4(h) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). WSL failed to answer the Complaint within the time permitted by Rule 12(a)(1) of the Fed. R. Civ. P. and, on January 13, 2005, this Court issued a default judgment against WSL.

The Commission has now submitted its Application for Entry of Injunctive Relief, a Civil Monetary Penalty, and Ancillary Equitable Relief Against WSL pursuant to Fed. R. Civ. P. 55(b)(2) and Local Rule 55.2(b) (the "Application"). The Court has carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Application, and other written submissions of the Commission filed with the Court, and being fully advised, hereby:

**GRANTS** the Commission's Application for injunctive relief, damages, restitution and disgorgement and enters findings of facts and conclusions of law. Accordingly, the Court now issues the following Order for Entry of Injunctive Relief, Damages and Ancillary Equitable Relief Against Defendant Walter, Scott, Lev & Associates, LLC ("Order").

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

This Court has jurisdiction over the subject matter of this action and WSL pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1, in that WSL was found in, inhabited, or transacted business in this district, and the acts and practices in violation of the Act occurred within this district, among other places.

### B.   Findings of Fact

WSL was a New York limited liability company organized in 1998 with an office at 90 John Street, Suite 407, New York, New York 10038. It has never been registered with the Commission in any capacity.

From at least January 1999 to at least April 2002 (the "relevant period"), WSL through its officers, directors, managers, employees and agents fraudulently solicited more than 850 customers for the purpose of trading foreign currency contracts that were, in fact, illegal off-exchange foreign currency futures contracts. Instead of actually trading their customers' funds, WSL misappropriated a substantial portion of these funds. At the same time, WSL misled customers with false monthly account statements showing considerable profits. WSL then abruptly notified customers that alleged catastrophic trading losses had wiped out their funds.

During the relevant period, at least $6,800,951 was misappropriated from customers by WSL and others.

The foreign currency contracts that WSL purported to offer and sell were futures contracts. WSL marketed its managed foreign currency trading accounts to individuals who had assets totaling less than $5 million and had no business, personal or other need to take or make delivery in foreign currency or to hedge against movements in the foreign currency markets. Instead, customers entered into these transactions to speculate and profit from anticipated price fluctuations in the markets for these currencies.

3

Customers did not anticipate taking – and did not take – delivery of the foreign currencies they purchased as a consequence of these investments. WSL did not require its clients to set up banking relationships to facilitate delivery of the foreign currencies. Once the market moved in a favorable direction, customers expected, based on the representations made to them, for WSL to liquidate their investments by authorizing the sale of the contract and taking the profits. The WSL customer account agreement made reference to the margining and settlement of transactions in WSL customer accounts, and one full paragraph in the customer agreement defined settlement procedures whereby all profits and losses were reflected in customer account statements the following month. WSL's account agreement and solicitation materials provided that commissions are charged on a round-turn basis. Moreover, WSL's brochure assured customers that their principal investments would be protected because WSL would be responsible for all margin requirements, and positions would be exited when stop losses are triggered.

WSL was not a proper counterparty, or an affiliate of a proper counterparty, under the Act authorized to engage in foreign currency futures transactions with retail customers. WSL was not a financial institution, a broker or dealer, or an associated person of a broker or dealer. WSL was not a futures commission merchant ("FCM"), or an affiliate of a FCM. WSL did not conduct transactions on a facility designated as a contract market or registered as a derivatives transaction execution facility.

WSL did not conduct the foreign currency futures transactions on or subject to the rules of a board of trade that had been designated by the CFTC as a contract market. WSL did not conduct transactions on a facility registered as a derivatives transaction execution facility.

Prior to December 21, 2000, WSL's conduct was such that it operated as a board of trade based upon its being a public marketplace offering futures contracts to buyers and sellers with the availability of price information and an execution and settlement mechanism. WSL mass marketed to small customers by providing a foreign currency trading facility that allowed its customers, with a minimum deposit, to become "traders" at its board of trade. WSL recruited traders, many of whom have no prior trading experience, and urged them to solicit the general public through cold calls to invest with WSL. WSL also provided the mechanism for traders to get prices, make orders, execute orders, and offset those orders with matching opposite transactions. WSL further confirmed, both orally and in writing, that the traders' orders had been executed. WSL's orders were leveraged contracts of its own devise. The contracts were closed out by entering into an offsetting transaction rather than by taking delivery.

### C. Conclusions of Law

#### 1. WSL's Transactions Were Futures Contracts

The transactions in this matter were foreign currency futures contracts. These contracts were fulfilled through offset to avoid delivery. Further, these foreign currency futures transactions were offered to or entered into with customers who were not eligible contract participants pursuant to Section 1a(12) of the Act, 7 U.S.C. § 1a(12). WSL, the counterparty to these futures transactions, was not a proper counterparty or an affiliate of a proper counterparty pursuant to Section 2(c)(2)(B) of the Act, 7 U.S.C. § 2(c)(2)(B). The Commission has jurisdiction over these transactions.

5

   2. **WSL is Liable for Violations of Section 4b(a)(2) of the Commodity Exchange Act and Commission Regulation 1.1(b)**

During the relevant period, WSL cheated or defrauded or attempted to cheat or defraud customers or prospective customers, willfully made or caused to be made false reports or statements, and willfully deceived or attempted to deceive customers or prospective customers by, among other things: misappropriating funds received from customers and making false statements regarding trading losses, the risks of trading foreign currencies, the legitimacy of the operation, and the safety of customer funds, all in violation of Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2001), and Regulation 1.1(b), 17 C.F.R.§ 1.1(b) (2002). WSL's conduct was in connection with the orders to make, or the making of, contracts of sale of commodities for future delivery, made or to be made, for or on behalf of any other persons, and such contracts for future delivery were or could be used for the purposes set forth in Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2001).

WSL is further liable for the violations of Section 4b(a)(2) of the Act, 7 U.S.C. § 6b(a)(2) (2001), and Regulation 1.1, 17 C.F.R.§ 1.1(b) (2002), by its officers, directors, managers, employees and agents pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B)(2001), and Regulation 1.2, 17 C.F.R.§ 1.2 (2002), because all such violations were within the scope of their office or employment with WSL.

   3. **WSL is Liable for Violations of Section 4(a) of the Commodity Exchange Act.**

During the relevant period, WSL offered to enter into, executed, confirmed the execution of, or conducted an office or business in the United States for the purpose of soliciting, accepting any order for, or otherwise dealing in transactions in, or in connection with, a contract for the purchase or sale of a commodity for future delivery when: (a) such transactions were not conducted on or subject to the rules of a board of trade which was designated or registered by the

Commission as a contract market or derivatives transaction execution facility for such commodity, and (b) such contracts were not executed or consummated by or through such contract market, in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a) (2001).

### 4. A Permanent Injunction, Civil Monetary Penalty, and Other Equitable Relief are Appropriate Remedies

Permanent injunctive relief is warranted in light of the egregious nature of WSL's conduct in fraudulently soliciting customers, as well as WSL's high level of scienter in conducting a well-planned scheme to systematically defraud the public and sell illegal foreign currency futures contracts. These facts demonstrate a reasonable likelihood of future violations.

Imposition of a civil monetary penalty is appropriate in this case because WSL's violations of the Act and Regulations were intentional and directly impacted the numerous victims of this fraudulent scheme. Likewise, the remedies of disgorgement and restitution are appropriate to compensate the victims of WSL's wrongful acts and to deprive WSL of the use of ill-gotten gains.

## II. ORDER FOR RELIEF

### A. Permanent Injunction

**IT IS THEREFORE ORDERED THAT:**

1. WSL is permanently restrained, enjoined and prohibited from directly or indirectly:

   A. Cheating or defrauding or attempting to cheat or defraud other persons, or willfully making or causing to be made to another person any false report or statement thereof, or willfully entering or causing to be entered for another person any false record thereof, or willfully deceiving or attempting to deceive another person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed with respect to any order or contract for another person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future

7

    delivery, made, or to be made, for or on behalf of any other person if such contract for future delivery is or may be used for:

      (1)  hedging any transaction in interstate commerce in a commodity or the products or byproducts thereof;

      (2)  determining the price basis of any transaction in interstate commerce in such commodity; or

      (3)  delivering any commodity sold, shipped, or received in interstate commerce for the fulfillment thereof

    in violation of Section 4b(a)(2) of the Act , 7 U.S.C. § 6b(a)(2) (2001), and Regulation 1.1(b), 17 C.F.R. §1.1(b) (2002); and

  B.  Offering to enter into, entering into, executing, confirming the execution of, or conducting any office or business anywhere in the United States, its territories or possessions for the purpose of soliciting, accepting any order for, or otherwise dealing in, any transaction in, or connection with, a contract for the purchase or sale of a commodity for future delivery in violation of Section 4(a) of the Act, 7 U.S.C. § 6(a)(2001).

  2.  WSL is further permanently restrained, enjoined and prohibited from engaging, directly or indirectly, in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4) ("commodity interest"), including but not limited to, the following:

    A.  Trading on or subject to the rules of any registered entity, at that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

    B.  Engaging in, controlling or directing the trading for any commodity interest account for or on behalf of any other person or entity, whether by power of attorney or otherwise;

    C.  Soliciting, receiving, or accepting any funds from any person in connection with the purchase or sale of any commodity interest contract;

    D.  Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9) (2008), or acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the

    Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9) (2008);

  E. Entering into any commodity interest transactions for its own personal account, for any account in which it has a direct or indirect interest and/or having any commodity interests traded on its behalf; and/or

  F. Engaging in any business activities related to commodity interest trading.

3. WSL is further permanently restrained, enjoined and prohibited from filing a petition in bankruptcy without providing the Commission with prompt notice by Certified Mail of such filing pursuant to Part II.H.2 of this Order.

4. The injunctive provision of this Order shall be binding upon WSL, upon any person who acts in the capacity of officer, agent, employee, attorney, successor and/or assign of WSL and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with WSL.

**B. Civil Monetary Penalty**

**IT IS FURTHER ORDERED** that as of the date of entry of this Order, WSL shall pay a civil monetary penalty in the amount of $10,863,783, consisting of triple its monetary gain of $3,621,261, plus post-judgment interest (the "CMP Obligation."). Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

WSL shall pay this CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made by other than electronic funds transfer, WSL shall make the payment payable to the Commodity Futures Trading Commission and send it to the following address:

    Commodity Futures Trading Commission
    Division of Enforcement
    ATTN: Marie Bateman – AMZ-300
    DOT/FAA/MMAC

9

>6500 South MacArthur Blvd.
>Oklahoma City, OK 73169
>Telephone: 405-954-6569

If the payment is to be made by electronic funds transfer, WSL shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. WSL shall accompany the payment of the penalty with a cover letter that identifies WSL and the name and docket number of this proceeding.

WSL shall simultaneously transmit a copy of the cover letter and the form of payment to (a) the Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, (b) Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address, and (c) Regional Counsel, Commodity Futures Trading Commission, Eastern Regional Office, 140 Broadway, 19th floor, New York, NY 10005.

**C.    Disgorgement and Restitution**

    **1.    Disgorgement**

**IT IS FURTHER ORDERED** that as of the date of this Order, WSL shall disgorge all benefits received, directly or indirectly, from acts or practices which constitute violations of the Act and Regulations as described. WSL is therefore liable to disgorge its ill-gotten gains in the amount of $3,621,261, plus pre-judgment interest and post-judgment interest. Pre-judgment interest shall accrue beginning on January 1, 1999 to the date of entry this Order shall be determined by using the underpayment rate established quarterly by the Internal Revenue Service pursuant to 26 U.S.C. § 6621(a)(2). Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

All disgorgement payments made by WSL shall be used to pay restitution to the defrauded customers.

WSL shall pay the disgorgement obligation to Brian Rosner, Esq., the Court-appointed Receiver, Rosner & Napierala, LLP, 26 Broadway, 22nd floor, New York, NY 10004-24424 by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check or bank money order or postal money order, under cover of a letter that identifies the name and docket number of this action and the name of this Court. WSL shall simultaneously transmit copies of the cover letter and the form of payment to (a) Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, (b) Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address, and (c) Regional Counsel, Commodity Futures Trading Commission, Eastern Regional Office, 140 Broadway, 19th Floor, New York, NY 10005.

2. **Restitution**

**IT IS FURTHER ORDERED** that as of the date of this Order, WSL shall pay, jointly and severally with its co-defendants in this matter, Maxim Yampolsky ("Yampolsky"), Edward Sapienza, Jr. ("Sapienza"), Frank Schiavone ("Schiavone") and Michael Korobov ("Korobov"), restitution to defrauded customers in the amount of $6,800,951, plus pre-judgment and post-judgment interest (the "Restitution Obligation"). Pre-judgment interest shall accrue beginning on January 1, 1999 to the date of entry of this Order and shall be determined by using the underpayment rate established quarterly by the Internal Revenue Service pursuant to 26 U.S.C. § 6621(a)(2). Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

WSL shall pay the Restitution Obligation to Brian Rosner, Esq., the Court-appointed Receiver, Rosner & Napierala, LLP, 26 Broadway, 22nd floor, New York, NY 10004-24424 by cashier's check, certified check or postal money order, under cover of a letter that identifies the name and Docket number of this action and the name of this Court. WSL shall simultaneously transmit copies of the cover letter and the form of payment to (a) Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, (b) Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address, and (c) Regional Counsel, Commodity Futures Trading Commission, Eastern Regional Office, 140 Broadway, 19th floor, New York, NY 10005.

### D. Priority of Monetary Sanctions and Partial Payments

1. Priority of Monetary Sanctions- All payments by WSL pursuant to this Order shall first be applied to satisfy WSL's Restitution and Disgorgement Obligations. After satisfaction of WSL's Restitution and Disgorgement Obligations, payments by WSL pursuant to this Order shall be applied to satisfy WSL's CMP Obligation.

WSL's Disgorgement Obligation is co-terminus with WSL's Restitution Obligation such that partial or full satisfaction of WSL's Restitution Obligation shall simultaneously result in identical partial or full satisfaction of WSL's Disgorgement Obligation. Further WSL's Disgorgement and Restitution Obligations are co-terminus with the disgorgement and/or restitution obligations imposed in this matter by this Court against WSL's co-defendants, Yampolsky, Sapienza, Schiavone and Korobov. In addition, WSL's Disgorgement and Restitution Obligations are co-terminus with the criminal judgment restitution obligations entered against Yampolsky, Sapienza, Schiavone, Ross and Korobov by the U.S. District Court for the Southern District of New York in *United States v. Yampolsky, Sapienza, Schiavone, Ross*

12

*and Korobov,* Docket No. 03 Cr. 01306-02 (DLC). Accordingly, partial or full satisfaction of Yampolsky's, Sapienza's, Schiavone's, and/or Korobov's civil disgorgement and/or restitution obligations and/or Yampolsky's Sapienza's Schiavone's, Ross' and/or Korobov's criminal restitution obligations shall simultaneously result in identical partial or full satisfaction of WSL's Disgorgement and Restitution Obligations.

2. <u>Partial Payments</u>- Any acceptance by the Commission and/or Receiver of partial payment of WSL's Disgorgement and/or Restitution Obligation and/or CMP Obligation shall not be deemed a waiver of the respective requirement to make further payments pursuant to this Order, or a waiver of the Commission's and/or Receiver's right to seek to compel payment of any remaining balance.

**E.    Appointment of Permanent Receiver**

1. <u>Permanent Receiver</u>:    Brian Rosner, Esq., Rosner & Napierala, LLP, 26 Broadway, 22nd floor, New York, NY 10004-24424 (the "Receiver") is appointed as a permanent equity Receiver to take into his immediate custody, control, and possession all cash, cashier's checks, funds, assets, and property of WSL, including funds or property of customers wherever found, whether held in the name of WSL or otherwise, including, but not limited to, all books and records of account and original entry, electronically stored data, tape recordings, all funds, securities, contents of safety deposit boxes, metals, currencies, coins, real or personal property, commodity futures trading accounts, bank and trust accounts, mutual fund accounts, credit card line-of-credit accounts and other assets, of whatever kind and nature and wherever situated, and authorizing, empowering and directing such Receiver to collect and take charge of and to hold and administer the same subject to further order of the Court, in order to prevent irreparable loss, damage and injury to customers, to conserve and prevent the dissipation of

funds, to prevent further evasions and violations of the Act and Commission Regulations by WSL and to satisfy WSL's Disgorgement and Restitution Obligation and to pay WSL's CMP Obligation.

2. The Receiver shall oversee WSL's Disgorgement and Restitution Obligations, and shall have discretion to determine the manner for distribution of funds in an equitable fashion to WSL's defrauded customers, as appropriate, or may defer distribution until such time as it deems appropriate. In the event that the amount of restitution payments to the Receiver are of a *de minimis* nature such that the Receiver determines that the administrative costs of making a restitution distribution is impractical, the Receiver may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Receiver shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part II.B. above.

3. The Receiver, subject to approval of the Court, is entitled to reasonable compensation for the performance of duties pursuant to this Order by it and all personnel hired by the Receiver, including counsel to the Receiver, and is also entitled to the cost of actual out-of-pocket expenses incurred by them (the "Receivership fees and expenses").

4. Within ninety (90) days after the Court approves and enters orders for final judgment against all the defendants in the following cases, 03 CV 9124, 03 CV 9125, 03 CV 9126, 03 CIV 9127, 03 CV 9128 and 03 CV 9129, the Receiver shall submit to the Court for approval, and serve upon the parties, a Distribution Plan setting forth the Receiver's methodology and protocol for disbursing funds to Moore's defrauded customers. Such Distribution Plan shall be consistent with the authority granted to the Receiver in Part II.E.2 above.

5.    Since inception of the Receivership, the Receiver has made to the Court and served upon the parties requests for compensation containing periodic reports which state the status of the of the Receiver's activities in connection with the collection and disbursement of funds and which include the Receiver's request for compensation of Receivership fees and expenses. The Receiver shall continue to file such reports periodically over the course of the Receivership, in any event at least every (90) days.

6.    The Receiver's requests for compensation of Receivership fees and expenses shall itemize the specific out-of-pocket expenses and the time and specific nature of services rendered by the Receiver and all personnel hired by the Receiver. The Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of this Court. The Commission shall have the opportunity to review and to object to each such request for compensation. Compensation approved by this Court shall be paid from funds held in the Receivership Checking Account.

7.    To the extent that any funds accrue to the U.S. Treasury as a result of either the Disgorgement Obligation or Restitution Obligation provided for in this Order, such funds shall be transferred to the Receiver for disbursement in accordance with the procedures set forth in paragraph II.E.2 above.

**F.    Cooperation**

WSL shall cooperate fully with the Commission, the Receiver, and/or any government agency seeking to enforce the disgorgement, restitution and civil monetary provisions of this Order by providing any requested information relating to its financial status including, but not limited to, income and earnings, assets, financial statements, asset transfers, and tax returns.

15

G.  **Equitable Relief Provisions**

The equitable relief provisions of this Order shall be binding upon WSL, upon any person insofar as he or she is acting in the capacity of officer, agent, servant or employee of WSL, and upon any person who receives actual notice of this Order, by personal service, email, facsimile or otherwise, insofar as he or she is acting in active concert or participation with WSL.

H.  **Miscellaneous Provisions**

  **IT IS FURTHER ORDERED THAT:**

  1.  **Prohibition on Transfer of Funds**

WSL shall not transfer or cause others to transfer funds or other property to the custody, possession or control of any other person for the purpose of concealing such funds or property from the Court, the Plaintiff, or any officer that may be appointed by the Court.

  2.  **Notices**

All notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested, as follows:

> Notice to Commission:   Regional Counsel
> U.S. Commodity Futures Trading Commission
> Division of Enforcement - Eastern Regional Office
> 140 Broadway, 19th floor
> New York, New York 10005.

All such notices to the Commission shall reference the name and docket number of this proceeding.

16

### 3. Continuing Jurisdiction of this Court

This Court shall retain jurisdiction of this case to assure compliance with this Order and for all other purposes related to this action.

**SO ORDERED**, at _____, New York on this \_\_\_ day of _____, 2008.

AUG 6 2008

_____
Honorable George B. Daniels
HON. GEORGE B. DANIELS
U.S. DISTRICT JUDGE

[AUG - 5 2008]

17

Respectfully submitted,

ATTORNEYS FOR PLAINTIFF
Stephen J. Obie
Regional Counsel

By: *[signature]*

Steven Ringer [SR- 9491]
Chief Trial Attorney
COMMODITY FUTURES TRADING COMMISSION
140 Broadway, 19th Floor
New York, New York 10005
(646) 746-9760
(646) 746-9940 (facsimile)
sringer@cftc.gov

18